UNITED STATES of America,
Appellee,

v.

Terry FINLEY, Defendant–Appellant.

No. 00–1090.

United States Court of Appeals,
Second Circuit.

Argued Sept. 28, 2000.

Decided April 5, 2001.

Denise E. O'Donnell, Rochester, New York (United States Attorney Western District of New York, Bret A. Puscheck, Assistant United States Attorney, of Counsel), for Appellee.

Mark D. Hosken, Rochester, New York (Assistant Federal Defender Western District of New York, Jay S. Ovsiovitch, of Counsel), for Defendant Appellant.

Before FEINBERG, WINTER and LEVAL, Circuit Judges.

FEINBERG, Circuit Judge:

Defendant Terry Finley appeals from a judgment of conviction entered on March 8, 2000 in the United States District Court for the Western District of New York (Charles J. Siragusa, Judge). Following a jury trial, Finley was convicted on all counts of a six-count indictment charging distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) (count I); possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) (count III); possession of a firearm during and in relation to a crime of drug trafficking in violation of 18 U.S.C. § 924(c)(1) (counts II and IV); and possession of an unregistered and illegally modified shotgun (counts V and VI). The district court sentenced Finley to 477 months imprisonment. Finley is currently incarcerated.

The principal question on appeal is whether a defendant may be sentenced to two mandatory, consecutive prison terms under 18 U.S.C. § 924(c)(1) when he possesses a single firearm during a single drug transaction that results in separate drug possession and drug distribution offenses. We find that the language of § 924(c)(1) does not support multiple firearm convictions on these facts. Therefore, we reverse Finley's § 924(c)(1) conviction on count IV, and affirm on the other counts.

I. Background

From the evidence before it, the jury could have found the following facts. On an evening in December 1998, an undercover Rochester police officer, Frank Alvarado, approached a residence at 240 Berlin Street to make a "confirmatory" drug buy—that is, to buy drugs at this residence prior to searching it pursuant to a previously obtained search warrant. Other officers waited nearby, ready to execute

the warrant after completion of the transaction. Officer Alvarado knocked on the kitchen window and, when Finley appeared, asked for "two bags". Alvarado then handed the defendant two $10 bills. This was "buy money", which had been photocopied by the police prior to the transaction so that serial numbers could be compared with those on bills confiscated after the subsequent arrest. Standing inside the house, Finley reached into a large plastic bag containing many smaller plastic bags and through the window handed Officer Alvarado two small bags containing .324 grams of cocaine. With the drugs in hand, Alvarado walked away from the house and informed the other police officers by radio that he had completed the purchase.

Approximately three minutes later, the other officers forcibly entered the house. Inside, the officers found Finley alone in the sole bedroom. Finley was carrying $390, including the $20 of "buy money" used by Officer Alvarado. After a search of the bedroom, the police discovered a large plastic bag containing 3.5 grams of cocaine hidden in the closet. The cocaine was packaged in 19 smaller plastic bags similar to the two bags purchased by Officer Alvarado. In the kitchen, the police found an unloaded sawed-off shotgun under a pile of clothes.

Finley was taken into custody. Officer Alvarado then returned to the scene and, from a distance of approximately 50 feet, identified Finley as the seller. Officer Alvarado is near-sighted and testified at trial that he was not wearing corrective lenses during the buy.

At trial, the government's evidence included the testimony of Officer Alvarado and other officers involved in the arrest, the cocaine sold by Finley to Alvarado, the cocaine discovered in the house and the sawed-off shotgun. At the close of the government's case Finley moved for a judgment of acquittal pursuant to Fed R.Crim.P. 29. The motion was denied. Defense counsel called two witnesses: the defendant and the owner of the residence at 240 Berlin Street. Following presentation of the defense case, Finley did not renew his motion for acquittal. The jury returned guilty verdicts on all six counts of the indictment.

At sentencing, the district count imposed a term of imprisonment of 477 months: 57 months on each of counts I, III, V and VI to run concurrently; 120 months on count II; and 300 months on count IV, both to run consecutively. This appeal followed.

II. Discussion

On appeal, Finley raises several grounds for reversal of his convictions. We deal with each in turn.

A. Sufficiency of the evidence for the two § 924(c)(1) convictions

■■■ Finley disputes the sufficiency of the evidence supporting his two firearm convictions under § 924(c)(1) (counts II and IV). As indicated above, defendant failed to renew his motion for acquittal on that ground at the close of the defense case. The Ninth Circuit has held that as a result of such a failure, an appellant has the burden of persuading a court of appeals on the insufficiency issue that there has been plain error or manifest injustice. *United States v. Quintero–Barraza*, 78 F.3d 1344, 1351 (9th Cir.1995). We agree that this is the appropriate standard of review in that situation. Moreover, even where the motion to acquit has been renewed, a defendant who challenges the sufficiency of the evidence still bears a heavy burden. "We must credit every inference that the jury may have drawn in favor of the government ... The jury's

verdict must be sustained, if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gore*, 154 F.3d 34, 40 (2d Cir.1998) (emphasis in original) (quotations and citations omitted).

At trial, the government sought to prove that Finley possessed the sawed-off shotgun found in the kitchen in furtherance of both his cocaine distribution and his cocaine possession offenses (counts I and III). Possession of a firearm may be established by showing that the defendant "knowingly [had] the power and the intention at a given time to exercise dominion and control over an object." *United States v. Hastings*, 918 F.2d 369, 373 (2d Cir. 1990). "Dominion, control, and knowledge may be inferred by a defendant's exclusive possession of the premises." *United States v. Wilson*, 107 F.3d 774, 780 (10th Cir.1997). In addition, the requirement in § 924(c)(1) that the gun be possessed in furtherance of a drug crime may be satisfied by a showing of some nexus between the firearm and the drug selling operation. See *United States v. Munoz*, 143 F.3d 632, 637 n. 5 (2d Cir.1998).

Finley contends that there was insufficient evidence to support a finding that he had knowledge of or dominion over the sawed-off shotgun. We disagree. Based on the evidence at trial, the jury could properly have found that Finley kept the shotgun for protection in proximity to the window from which he sold the drugs. Finley also argues that the evidence did not show that he had control of the house. However, a reasonable jury could also have found the requisite control based on the evidence that Finley was conducting a drug dealing business by himself from inside the house.

### B. Police identification of Finley

Before trial, Finley moved for a hearing under *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) to determine whether the identification procedure employed by the Rochester police was so overly suggestive as to deny him due process. Finley emphasizes that Officer Alvarado, who admitted to being near-sighted during his testimony, identified Finley at night from a distance of approximately 50 feet. Without requiring an evidentiary hearing, the district judge found that the "affidavit of the government was sufficient to establish the circumstance under which the identification was made," and contained enough facts to establish the reliability of the identification. The judge adhered to this ruling at trial. Finley argues to us that the court erred in admitting the identification evidence and that, at a minimum, he was entitled to a suppression hearing.

We review a district court's determination of the admissibility of identification evidence for clear error, *United States v. Mohammed*, 27 F.3d 815, 821 (2d Cir. 1994), and the decision not to hold an evidentiary hearing for abuse of discretion. *United States v. Martinez*, 151 F.3d 68, 74 (2d Cir.1998).

We find that the district court did not clearly err in deciding that the identification procedure used in this case had sufficient indicia of reliability to satisfy due process. See *United States v. Bautista*, 23 F.3d 726, 729 (2d Cir.1994) (identification excluded only where it is "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law."). When Officer Alvarado first observed Finley during the cocaine transaction the two were about three feet apart. The subsequent identification occurred less than 10 minutes later. Although it was made at

night from a distance of approximately 50 feet, Finley was illuminated both by streetlights and a flashlight. On these facts, the district court did not abuse its discretion in denying Finley's request for an evidentiary hearing.

## C. Ineffectiveness of counsel

■■■■ Finley argues that defense counsel's failure to renew his motion for acquittal at the close of the defense case rendered his representation ineffective. Because claims of ineffective assistance of counsel frequently involve factual issues that are not reflected in the trial record, they are usually not resolved on direct appeal. Also, such claims are not appropriately considered on direct appeal when the appellant continues to be represented by the attorney charged with the ineffective conduct. Here, however, the defendant has new counsel on appeal and he argues no ground that is not fully developed in the record. We see no reason to defer consideration of the claim to a habeas corpus proceeding.

■■■■ We review a claim of ineffectiveness of counsel de novo. *United States v. Blau,* 159 F.3d 68, 74 (2d Cir.1998). In order to prevail on this claim, defendant must demonstrate "(1) that counsel's performance 'fell below an objective standard of reasonableness,' ... and (2) that there is a 'reasonable probability' that, but for the deficiency, the outcome ... would have been different[.]" *McKee v. United States,* 167 F.3d 103, 106 (2d Cir.1999), quoting *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Applying this rule, we find that the failure

of Finley's counsel to renew the motion for acquittal did not amount to inadequate representation. The defense case consisted of calling the defendant and a single witness, the owner of the house at 240 Berlin Street. The landlord testified that he had never before seen the defendant. Finley apparently argues that this evidence would have *required* the district court to grant a renewed motion for judgment of acquittal under Fed Crim.R.P. 29. But this is not so. Even if the landlord had not rented the house, or part of it, directly to Finley, there still would have remained an issue for the jury as to whether Finley had the necessary "dominion and control" over the shotgun in view of the evidence on that issue already presented by the government. In other words, the district court could not properly have reversed its earlier denial of Finley's Rule 29 motion had it been renewed. It is true that defense counsel's failure to renew the motion increased Finley's burden on appellate review of his sufficiency of the evidence claim, but our decision on that issue would have remained the same even if the usual, and less burdensome, standard of review applied.

## D. Sentencing error

■■■■ Finley also argues that the district court erred in sentencing him under § 924(c)(1)(B)(i) to an additional five years in prison for possession of a short-barreled shotgun.[1] According to Finley, the jury was instructed, with respect to counts II and IV, to find only that the defendant had possessed a firearm in furtherance of his drug trafficking offenses. Neither count II nor count IV of the indictment nor the

---

1. Under § 924(c)(1)(B)(i), a defendant who is convicted for possession of a short-barreled shotgun for the first time "shall be sentenced to a term of imprisonment of not less than 10 years." By contrast, the sentence for a first § 924(c)(1) conviction involving a non-specified firearm is five years. We note that Finley's objection on that ground to count IV is irrelevant—the punishment for a second § 924(c)(1) conviction is at least 25 years, regardless of the type of firearm.

charge to the jury on those counts required a finding that the defendant had possessed a short-barreled shotgun.

Finley relies on the holding in *Castillo v. United States*, 530 U.S. 120, 120 S.Ct. 2090, 2092, 147 L.Ed.2d 94 (2000) that a jury charge under an earlier version of § 924(c)(1) must identify the firearm type and a jury must find that element proved beyond a reasonable doubt. However, the jury's conviction of Finley on counts V and VI of the indictment make clear that this requirement was satisfied.[2] Although facially deficient, counts II and IV were not the only counts of the indictment that dealt with the firearm in question. Counts V and VI did describe the shotgun in sufficient detail, and the jury found beyond a reasonable doubt that Finley had possessed a short-barreled shotgun. Any error in either counts II or IV of the indictment or in the jury charge on those counts was therefore harmless.

### E. Multiplicity of counts I and III

Finley also argues that the district court erred as a matter of law when it denied the defense motion to dismiss the drug possession charge in count III of the indictment as multiplicitous. Count I charged distribution and was based on Finley's sale of the two bags of cocaine to Officer Alvarado. Count III charged possession of cocaine with intent to distribute and, from the evidence in the record, was apparently based on the remaining 19 bags that were not sold and were found in Finley's possession. According to Finley, count III violated the Double Jeopardy Clause of the Fifth Amendment because it

was not based on separate and distinct elements from count I.

"An indictment is multiplicitous when it charges a single offense ... multiple times, in separate counts, when, in law and fact, only one crime has been committed." *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir.1999) (citations omitted). Multiplicity is a question of law that we review de novo. *Id.* at 146. To determine whether separate counts charge the same offense more than once, we apply the test set out by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). "Under Blockburger, we determine 'whether there are two offenses or only one [by] whether each provision requires proof of a fact which the other does not.'" *United States v. Gore*, 154 F.3d 34, 44, quoting *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180.

In *Gore*, we faced the precise issue before us today, namely whether drug distribution and drug possession offenses under 841(a)(1) may be charged separately when they arise from the same transaction. We held there that "possession with intent and distribution should not be regarded as the same offense ... except under the narrow set of facts where the evidence shows *only* that the defendant handed over a packet of drugs." *Gore*, 154 F.3d at 46 (quotations and citations omitted) (emphasis added). The *Gore* court reasoned that where a defendant sells the entire quantity of drugs he possesses, his possession merges into the completed distribution offense. *Id.* at 45–47. That is not what happened here. The evidence at trial showed that

---

**2.** In counts V and VI Finley was charged with offenses relating to the nature of the firearm he possessed. Specifically, he was charged with possessing a shotgun having a barrel less than 18 inches in length and an overall length of less than 26 inches in violation of 26 U.S.C. §§ 5822, 5845(a)(1) & (2), 5861(c) and 5871

(count V); and with possessing a similarly short-barreled firearm not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5845(a)(1) & (2), 5861(d) and 5871 (count VI).

Finley sold only two of the 21 bags of cocaine and continued to possess the other 19. Clearly, on this evidence and in light of our holding in *Gore,* the indictment here properly charged possession and distribution separately.

## F. Application of § 924(c)(1)

▆ Finally, we turn to the most difficult issues on this appeal. As indicated earlier, Finley received a sentence of 477 months, which translates into 39 years, 9 months. The district court imposed 25 years of this sentence pursuant to the mandatory, consecutive sentence requirement for a second violation of § 924(c)(1), which was charged in count IV. Finley argues that the district court erred in finding two violations of § 924(c)(1) here. He claims, among other things, that counts II and IV of the indictment violate the Double Jeopardy Clause because they twice charge Finley under § 924(c)(1) for possessing the same firearm—the sawed-off shotgun. The government correctly argues that counts I and III charge separate crimes (as we have just held in II–E above) and goes on to claim that because the shotgun was used in connection with both the district court applied § 924(c)(1) properly.

In relevant part, § 924(c)(1) states that "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall . . . be sentenced to a term of imprisonment of not less than five years."[3] In addition, the section provides that "second or subsequent convictions" will carry enhanced penalties. In the present appeal,

the "second" § 924(c) conviction (count IV) carried a mandatory and consecutive 25–year prison term.

Even a brief review of the case law in this area shows that reasoned application of § 924(c)(1) can be extremely difficult. The "wildly divergent interpretations" of the proper application of § 924(c)(1) can be seen in the numerous opinions and cases discussed in the divided en banc decisions in *United States v. Anderson,* 59 F.3d 1323, 1339 (D.C.Cir.1995) and *United States v. Johnson,* 25 F.3d 1335 (6th Cir. 1994), *rev'd on other grounds,* 529 U.S. 53, 120 S.Ct. 1114, 146 L.Ed.2d 39 (March 1, 2000), all applying § 924(c)(1). Many of the cases interpreting § 924(c)(1) deal with the possession or use of multiple guns in connection with each of the predicate offenses charged. See, e.g., *Anderson* (four different § 924(c)(1) violations charged for four guns used in one underlying drug conspiracy offense); *United States v. Lindsay,* 985 F.2d 666 (2nd Cir.1993) (fourteen § 924(c)(1) violations charged for seven firearms used in each of two predicate drug offenses). Our problem is essentially the reverse. We have two predicate offenses—(1) possession of a drug with intent to distribute (count III) and (2) distribution of the drug (count I)—and a single gun continually possessed.

In *United States v. Johnson,* the Sixth Circuit held that consecutive sentences for multiple § 924(c)(1) violations were improper where the defendant used two firearms in connection with the simultaneous possession of two different types of narcotics. The majority found that

"a sensible construction [of § 924(c)(1) ] dictates that possession of one or more

---

**3.** We note the district court correctly instructed the jury to consider only whether Finley "possessed" the shotgun. Clearly, the evidence could not have demonstrated that Finley "used" or "carried" the shotgun in viola-

tion of § 924(c)(1). See *Bailey v. United States,* 516 U.S. 137, 144, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) ("to establish 'use' for the purposes of the statute . . . the Government must show active employment of firearm.").

firearms in conjunction with predicate offenses involving simultaneous possession of different controlled substances should constitute only one offense under § 924(c)(1) ..."

25 F.3d at 1338. The court noted that the opposite conclusion would lead to "absurd results", inconsistent with reasonable congressional intent. *Id.*

In United States v. Wilson, 160 F.3d 732 (D.C.Cir.1998), the D.C. Circuit also found problematic multiple § 924(c)(1) violations based on simultaneous predicate offenses. In *Wilson,* the defendant was convicted on two § 924(c)(1) charges of using a gun to commit simultaneous violent felonies on one victim: first degree murder and the killing of a witness to prevent him from testifying. The court vacated the second § 924(c)(1) conviction, holding that "[h]owever many crimes ... may have been committed, there was only one use ... of a firearm." 160 F.3d at 749.

There is a widely-shared view that the statute's text is ambiguous. See *Anderson,* 59 F.3d at 1333. On these facts, we agree. The statute does not clearly manifest an intention to punish a defendant twice for continuous possession of a firearm in furtherance of simultaneous predicate offenses consisting of virtually the same conduct. In *Lindsay,* 985 F.2d 666, this Court found that, due to the ambiguity of § 924(c)(1), lenity should guide statutory interpretation. Quoting from *Bell v. United States,* 349 U.S. 81, 84, 75 S.Ct. 620, 99 L.Ed. 905 (1955), we stated that " 'if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses.' " *Id.* at 672–673.[4]

In this case, the predicate offenses were simultaneous or nearly so, they consisted of virtually the same conduct with the same criminal motivation and one of them (possession of a drug with intent to distribute) was a continuing offense.[5] Moreover, the possession of the shotgun was itself a continuing offense. As noted by the D.C.Circuit in the majority opinion in *Anderson,* 59 F.3d at 1328, Senator Mansfield, a sponsor of the amendment to clarify the enhancement for a second § 924(c)(1) violation, stated that "this bill provides ... [an] additional penalty for ... choosing to use or carry a gun ... If that choice is made *more than once,* the offender can in no way avoid a prison sentence." 115 Cong.Rec. at 34,838 (Nov. 19, 1969) (emphasis added). Finley only chose to "possess" the firearm once, albeit in a continuing fashion. In addition, at the moment the sale occurred here, Finley had already committed both of the predicate crimes. Allowing a second § 924(c)(1) conviction to stand based on the discovery of the remaining 19 bags of cocaine minutes after the sale increased Finley's sentence by 25 years even though he had committed no additional predicate crime in the intervening period.

We assume arguendo that Congress may, if it makes its intention clear, enact a statute that turns the transaction in this

---

**4.** We note that in *Lindsay,* we considered the situation of multiple § 924(c)(1) violations in relation to what we held to be a single predicate offense. Consequently, we did not decide the issue before us today-whether a single gun, continually possessed during a single drug transaction can result in two § 924(c)(1) convictions where the two predicate drug crimes are so closely linked in time.

**5.** The temporal nexus between the predicate crimes is more complex than that suggested by the dissent and is not limited to the mere fact that the sale and subsequent seizure were only three minutes apart. While not coterminous, the sale and possession offenses both "occurred" at the moment the sale took place and were thus simultaneous or nearly so.

case into two firearm offenses that require the imposition of two consecutive sentences, the second of which is for 25 years. However, where a defendant is charged with the continuous, constructive possession of a firearm in furtherance of a sale of a part of a quantity of narcotics possessed, coupled with the continued possession of the remainder immediately following the sale, Congressional intent is not sufficiently clear to compel such a result, which even the dissent agrees is "draconian". For example, an armed drug dealer who has 10 glassine bags to sell and sells two to an undercover agent is a daily commonplace. The government contends that on such facts, it can require the court to impose two mandatory consecutive sentences totaling 30 years, over and above the drug sentences. If the undercover agent had purchased all the bags in the defendant's possession, only one § 924(c)(1) sentence of five years could be imposed.[6] But if the agent buys less than all 10 bags, the one mandatory extra sentence grows to two, and the mandatory five years grows to 30. We very much doubt that Congress intended the statute to command such an illogical and exaggerated result. In our view, it was not Congress's intention in using the words, "a second or subsequent conviction" to secure the imposition of a second, mandatory 25-year sentence where the two criminal transactions, as in this case, are so inseparably intertwined. We therefore reverse Finley's second firearm conviction.[7]

In sum, we affirm all of Finley's convictions except for the second § 924(c)(1) conviction (count IV) as to which we reverse.

WINTER, Circuit Judge, dissenting:

I respectfully dissent.

I agree with my colleagues as to Finley's convictions on Counts I, II, III, V, and VI. I disagree, however, as to the conviction on Count IV. Under the unambiguous language of 18 U.S.C. § 924(c)(1), use of a firearm (i) to provide security during a drug sale and thereafter (ii) to protect the stash of drugs retained after the sale (and during the contemplated additional sales) constitutes two separate firearm crimes in furtherance of two drug trafficking crimes. I appreciate the troubling result of this conclusion, namely a mandatory and consecutive 25-year prison term for the second firearm conviction. But this is not the forum in which to challenge Congress's provision of harsh penalties for serious crimes.

Section 924(c)(1)(A) criminalizes the possession of a firearm "during and in relation to any crime of violence or drug trafficking crime ... or ... in furtherance of any

---

**6.** The mandatory five years grows to 10 if the firearm is a sawed-off shotgun. See note 1 supra.

**7.** The dissent, in footnote 5, warns that our holding today may have unanticipated consequences in later cases. In particular, the dissent fears preclusion of multiple § 924(c)(1) charges where a defendant, as in *United States v. Rahman*, 189 F.3d 88 (2d Cir.1999), uses a firearm to commit two murders while fleeing a crime scene or, as in *United States v. Furrow*, 125 F.Supp.2d 1170, (C.D.Cal.2000), uses a firearm to commit five murders in rapid succession. We believe such scenarios are readily distinguished from

the present case both in terms of the nature and timing of the predicate offenses and the active employment of the firearm. Cf. *Bailey*, 516 U.S. at 143, 116 S.Ct. 501, discussed supra note 3. (In analyzing a previous version of § 924(c)(1), the Court contrasted a charge under the statute's "use" language, requiring a showing of "an *active employment* of the firearm by the defendant," with a charge of simple possession.). These multiple "uses" of a firearm would ostensibly not be charged under the possession language of § 924(c)(1) and, in any event, have little in common with the continuous and passive possession in this case.

such crime." This language states without qualification that use of a firearm in furtherance of two or more crimes of violence or drug trafficking crimes is itself two or more additional crimes. .There is nothing in the language requiring that the predicate crimes be separated by a particular amount of time, and I am genuinely puzzled as to what pertinent ambiguity lurks in it or what word or phrase would clarify it should Congress so desire.

In reaching a different conclusion, my colleagues rely on the fact that courts have perceived ambiguities in the Section 924(c)(1)(A). However, the ambiguities addressed by these decisions arise from two factual situations quite different from the one we address here. The first ambiguity involves the possession of a firearm during a single act that happens to constitute two different crimes. *See United States v. Wilson*, 160 F.3d 732, 749 (D.C.Cir.1998) (invalidating second Section 924(c)(1) conviction where defendant's shooting of single witness happened to constitute two separate federal crimes, because "there was only one use of the firearm"); *United States v. Johnson*, 25 F.3d 1335, 1336–38 (6th Cir.1994) (en banc) (invalidating sentence based on multiple Section 924(c)(1) counts where defendant simultaneously trafficked in more than one controlled substance, emphasizing that key fact was that defendant committed all predicate offenses simultaneously), *rev'd on other grounds*, 529 U.S. 53, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000). The second ambiguity addressed in other decisions involves the possession of multiple firearms during a single criminal act. *See United States v. Anderson*, 59 F.3d 1323, 1334 (D.C.Cir.1995) (en banc); *United States v. Lindsay*, 985 F.2d 666, 674 (2d Cir.1993).

Whatever ambiguity Section 924(c)(1) may harbor as to the two situations addressed in *Wilson* and *Anderson*, the Section is strikingly unambiguous with regard to the very different issue presented here: whether, if two separate drug crimes are committed, continual possession of a firearm in furtherance of each constitutes two further crimes.

We all agree that, under our caselaw, Finley was properly convicted of two separate drug offenses. When a sale by a drug dealer does not exhaust the dealer's stock and an additional quantity of drugs is retained with an intent to sell, the separate crimes of distribution and possession with intent to distribute have been committed under 21 U.S.C. § 841(a)(1). *See United States v. Gore*, 154 F.3d 34, 45–47 (2d Cir.1998) (citing *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)).

Because Finley committed two drug trafficking crimes, his possession of a weapon in furtherance of those crimes constituted two more crimes under both the logic and language of Section 924(c)(1). At the time of the confirmatory buy, Finley possessed the gun to protect himself from the buyer. Then, after the sale, he possessed the gun to guard the remaining stash of drugs and to protect himself during the intended future transactions. The existence of two different drug trafficking acts thoroughly distinguishes the instant matter from *Wilson*, in which the defendant was convicted on two Section 924(c)(1) charges for a single criminal act: using a gun to kill a witness to prevent him from testifying, which constituted both first-degree murder and killing a witness to prevent his testimony. *See Wilson*, 160 F.3d at 749.[1] The multiple-weapon issue

---

1. Senator Mansfield's comments, relied upon by my colleagues, *see ante* at 207, do not

undermine the application of the statute to both predicate drug offenses; rather, they

addressed in *Anderson* of course has nothing to do with the present case.

Moreover, our caselaw has without deviation held that the continuous possession of a firearm during multiple criminal acts properly supports multiple 924(c)(1) convictions:

> Congress considered the appropriate unit of prosecution to be the underlying drug-trafficking offense, not the separate firearms. Only where the defendant commits multiple drug-trafficking crimes or violent crimes, and the government can link the firearms to those crimes, may the government prosecute for multiple violations of § 924(c)(1).

*Lindsay,* 985 F.2d at 674 (internal citation omitted).[2]

Because there is nothing in the statute or caselaw suggesting that the predicate crimes must be separated by any particular amount of time, there is no reason to invoke the rule of lenity. *See United States v. Shabani,* 513 U.S. 10, 17, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994) ("The rule of lenity ... applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute."), *quoted in United States v. Velastegui,* 199 F.3d 590, 593 (2d Cir.1999).

Finally, the test adopted by the present decision—that there can be only a single Section 924(c)(1) violation where the multiple predicate offenses are "simultaneous or nearly so"—introduces a standard so amorphous that it fails to apprise juries, courts, and defendants of what conduct violates Section 924(c)(1). As a result of the present decision, the lack of a close temporal relation among predicate acts is an element of multiple Section 924(c)(1) violations. Juries will have to be instructed on it, and, given the absence of more guidance as to how distant the temporal relation among the predicate acts must be, we can expect inconsistent verdicts. Even slight variations on the facts of the present case reveal potentially great difficulties. For example, if another drug customer appeared at Finley's window three minutes after the confirmatory buy and another sale occurred, the arrest and discovery of the remaining stash and shotgun might have occurred ten minutes instead of four minutes after the first buy. Three drug crimes would have been committed, but the number of permissible firearms charges—one, two, or three—would be a question on which the present decision offers no guidance. For another example, the officers might have continued to surveil Finley for several hours after the confirmatory buy but observed no further sales. An arrest at that point would have

---

support it. Senator Mansfield stated that his concern was with criminals who make the choice to use a gun more than once in connection with drug offenses. *See* 115 Cong. Rec. 34,838 (1969).

**2.** At oral argument, Finley argued that under the indictment and the jury instructions, the jury was left free to find guilt on both drug counts (and thus both gun counts) based solely on the sale to the undercover officer without its ever having to reach the issue of whether he still possessed drugs after the sale. *See Gore,* 154 F.3d at 45–47. But while Finley might have been entitled to an instruction

that guilt on the possession charge had to be based on his having a stock of drugs after the sale, he did not ask for such a charge and the failure to give it *sua sponte* is at best harmless error. Any jury that credited the undercover officer's testimony as to the sale would surely have credited the testimony of the arresting officers about the drugs in Finley's possession at the time of the arrest. *See United States v. Jackson,* 196 F.3d 383, 384–86 (2d Cir.1999) (holding that harmless error review applies to erroneous omission of element of offense from jury instructions (citing *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999))).

revealed the weapon and additional drugs, but the use of Section 924(c)(1) would be in doubt because of the amorphous temporal test adopted here. Moreover, district courts may have to address habeas petitions attacking convictions based on jury verdicts or guilty pleas, and, if the merits are reached, will face similar difficulties.[3]

Although I agree with the characterization of Finley's sentence as draconian, I am less certain that the rule adopted by my colleagues will always seem as attractive as it may in the present context. All violent federal crimes broadly defined,[4] as well as drug trafficking, are predicate crimes under Section 924(c)(1). Multiple violent crimes are often "simultaneous or nearly so," and, for example, limiting the

prosecution to one Section 924(c)(1) charge for three rapid-fire, execution-style murders in the course of robbing a federally insured bank, each of which would be a separate crime under 18 U.S.C. § 2113(e), strikes me as odd.[5]

I would therefore affirm the convictions.

---

**3.** A prisoner who pleaded guilty to multiple Section 924(c)(1) counts prior to the present decision could bring a 28 U.S.C. § 2255 petition based upon the arguable lack of temporal proximity of the predicate crimes. If one of the Section 924(c)(1) offenses were no longer a crime under the present decision, the plea would not have been knowing and voluntary. *See, e.g., United States v. Simmons*, 164 F.3d 76, 79 (2d Cir.1998) (per curiam) (stating that when definition of element of crime changes, prior guilty pleas based upon old definition "may be challenged as not having been knowing and voluntary" (citing *Salas v. United States*, 139 F.3d 322, 324 (2d Cir.1998))).

**4.** Section 924(c) reads:

For purposes of this subsection the term "crime of violence" means an offense that is a felony and—

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

**5.** There are other examples. El Sayyid Nosair was prosecuted for seditious conspiracy

and other offenses that arose from, and were related to, a plot to bomb various buildings and structures in New York City, including the World Trade Center. *See United States v. Rahman*, 189 F.3d 88 (2d Cir.1999). Nosair was observed with a gun immediately after the shooting murder of Rabbi Meir Kahane at the Marriot East Side Hotel in New York, and immediately attempted to flee the room in which the shooting had occurred. *Id.* at 105. On his way out of the room, he shot a man who sought to impede his exit; once outside the hotel, he shot a uniformed postal police officer. *See id.* Although these three uses of a firearm were part of the same criminal episode and evidently occurred in as rapid succession as Finley's predicate crimes, Nosair was convicted on three Section 924(c)(1) counts, predicated on underlying counts of murder and attempted murder in aid of a racketeering activity and attempted murder of a postal employee. *See id.* at 148 n. 26. Similarly, Buford O'Neal Furrow, Jr. faces five separate 924(c) charges, for the alleged rapid-succession shooting of five children, predicated on underlying counts of violent interference, on account of race or religion, with federally protected activities. *See United States v. Furrow*, 125 F.Supp.2d 1170 (C.D.Cal. 2000) (noting charging of multiple 924(c) counts).