UNITED STATES of America, Plaintiff–Appellee,

v.

Myron T. CLARK, Defendant– Appellant (00–4197),

Tracy Johnson, Defendant– Appellant (00–4198).

No. 00–4197, 00–4198.

United States Court of Appeals, Sixth Circuit.

June 24, 2002.

Before MARTIN, Chief Circuit Judge; KEITH and KENNEDY, Circuit Judges.

PER CURIAM.

Defendants Myron T. Clark and Tracy Johnson appeal their convictions for federal narcotics and firearms violations on the following grounds: (1) Johnson argues the district court erred in denying his Rule 29 motion for acquittal on his 18 U.S.C. § 924(c)(1)(A)(i) and (ii) convictions for "carrying" and "brandishing" a firearm during and in relation to a drug trafficking crime; (2) Clark argues the district court erred in denying his Rule 29 motion for acquittal on his section 924(c)(1)(A)(ii) conviction for "brandishing" a firearm; (3) both defendants argue the district court erred in imposing separate consecutive sentences for their respective section 924(c) violations; (4) Johnson contends that his trial counsel was ineffective in failing to move for a new trial because his section 924(c) convictions were against the manifest weight of the evidence; (5) Johnson argues that his thirty-two year sentence for two section 924(c) convictions violates the Eighth Amendment; and (6) both defendants assert that *Apprendi* required the government to prove the exact quantity of drugs attributable to each beyond a reasonable doubt. For the following reasons, we AFFIRM defendants' convictions and sentences.

## I.

After receiving a tip that Clark and Johnson were selling drugs while armed with firearms at 126½ East Sixth Avenue, Columbus, Ohio, agents from the Bureau of Alcohol, Tobacco, and Firearms and detectives from the Columbus Police Department, wired an informant, Stanley Davis, for a controlled buy in December 1999. Earlier that year, a Franklin County Grand Jury indicted Davis on a variety of charges, including possession of crack cocaine.

At or about 4:45 p.m. on December 21, Davis purchased .9 grams of crack cocaine from Johnson at the 126½ East Sixth Avenue residence. During the buy, Johnson slid a nine millimeter handgun out from under the sofa where he and Davis were sitting. Johnson then slid the gun back under the sofa and then pulled out a floral plate filled with crack cocaine. According to Davis, the plate contained about five or six hundred dollars worth of crack. At trial, Davis speculated that Johnson pulled the gun out by accident, that "he just grabbed the wrong thing at the wrong time." Clark was not present during this transaction.

Approximately two hours later, Davis made a controlled purchase of .8 grams of crack cocaine from Johnson and Clark. During this buy, Davis saw a handgun lying on the floor next to Johnson's foot. Because the gun was pointing at him, Davis asked Johnson to turn the gun around. During this encounter, Clark pulled a gun from the couch, played around with it and then returned the gun to the couch.

After a trip to a nearby convenience store for beer and cigarettes, Davis returned to the Sixth Avenue residence. While he was there, Johnson again grabbed his gun. In response, Davis asked "Why are you always grabbing that gun, man?" Johnson replied, "I'm going to put a slug in a nigger." Johnson was also handling the gun and pointing it in Davis's direction. Davis asked him to turn the gun the other way.

When Davis left the residence, Johnson, carrying his gun, escorted him to the door. As Davis testified:

A: When I was leaving, Tracy walked me down the stairs, and he had the gun in his hand, so I told him, I'm like, why is you always carrying that gun around? Nobody coming near me. Why are you carrying that gun? You don't need to walk me to the door with the gun.

On January 12, 2000, Davis made a controlled purchase of 2.6 grams of crack cocaine from Clark. During this purchase, Davis observed two nine millimeter handguns, one of which was on the side of the couch, and one of which was under a pillow. When Clark went to retrieve the crack for Davis in the bedroom, Clark picked up one of the handguns and carried it with him.

During this purchase, a dispute arose regarding the weight of the crack to be sold. Clark became suspicious that Davis was wearing a wire and made an attempt to frisk Davis. As Davis testified:

A: He was like, man, is you wired up, man? Get off of me, man, get off of me. He started reaching behind me. He almost felt the wire, but he didn't.

Q: Did you push him away?

A: Yes, I did.

Q: What happened next?

A: After that, he stopped and he sat down and he looked at me and I looked at him. Then we started talking, and we threw the conversation off to something else . . .

After this buy, the federal agents and police detectives searched both 833 East Starr Avenue and 126½ East Sixth Avenue. At the East Starr residence, law enforcement retrieved a number of firearms.

After a jury trial, both Clark and Johnson were convicted of conspiracy in violation of 21 U.S.C. § 846 (Count 1), two counts of distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Counts 2 and 4 for Johnson, Counts 4 and 6 for Clark), two counts of carrying and brandishing a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(i) and (ii) (Counts 3 and 5 for Johnson, Counts 5 and 7 for Clark). Clark was also convicted of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) and § 924(a)(2) (Count 8), and possession of counterfeit obli-

gations in violation of 18 U.S.C. § 472 (Count 9). The indictment did not specify a drug quantity attributable to Clark or Johnson, but the district court found that Clark possessed 7.1 grams of crack cocaine and that Johnson possessed 4.5 grams of crack cocaine. The district court sentenced Clark to forty-one years and two months, and Johnson to thirty-eight years and five months. Both defendants filed timely notices of appeal.

## II.

In deciding whether evidence is sufficient to withstand a motion for an acquittal, we view the evidence and all reasonable inferences in the light most favorable to government, and will affirm the judgment if any reasonable jury could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Owusu*, 199 F.3d 329, 341 (6th Cir.2000); *United States v. Gibson*, 675 F.2d 825, 829 (6th Cir.1982).

## A.

■ Johnson argues there was insufficient evidence to find that he either carried or brandished a firearm during his two December 21, 1999 drug sales to Davis. To sustain a conviction for "carrying" a firearm under section 924(c)(1)(A), the government must prove that the firearm was immediately available to and, in some fashion, physically transported by the defendant. *United States v. Moore*, 76 F.3d 111, 113 (6th Cir.1996). Because the indictment charged only "carrying," we may only sustain Johnson's conviction if the facts support a finding of "carrying." We may not affirm Johnson's conviction if the facts support a finding of "using," but not "carrying." *See Fair v. United States*, 157 F.3d 427, 430 (6th Cir.1998). To be convicted of "brandishing" under section 924(c)(1)(A)(ii), the defendant must "dis-

play all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." 18 U.S.C. § 924(c)(4).

During the first buy on December 21, 1999, Johnson slid a nine millimeter handgun out from under the sofa where he and Davis were sitting. Johnson then slid the gun back under the sofa and pulled out a floral plate filled with crack cocaine. In view of these facts, a reasonable jury could have concluded that Johnson transported the gun from its easily accessible location underneath the couch. Davis's speculation that Johnson pulled the gun out by accident is simply not controlling. Similarly, a reasonable jury also could have concluded that Johnson intentionally pulled out the gun to intimidate Davis. Although Johnson emphasizes Davis's testimony that he was not afraid, the operative inquiry is Johnson's intent, not the actual effect on the informant.

During the second buy, Davis saw a handgun lying next to Johnson's foot. Because the gun was pointing at him, Davis asked Johnson to turn the gun around. Again, a reasonable jury could have concluded that Johnson deliberately placed the gun at his foot to intimidate any potential buyers, and that he therefore "brandished" the gun within the meaning of section 924(c).

### B.

■ Although he concedes the jury had sufficient evidence to convict him of "carrying" a firearm, Clark argues that the evidence does not support his "brandishing" conviction. During the second transaction on December 19, 1999, Clark pulled out a handgun, played around with it, and then returned it to the couch. Like Johnson, Clark cites Davis's testimony that he was not, in fact, intimidated by Clark's gun

play. But again, the statute turns on the defendant's intent, not the actual effect on the informant. Therefore, Davis's testimony would not foreclose a reasonable jury from finding that Clark "brandished" the firearm.

With respect to the January 12, 2000 transaction, Clark references Davis and Clark's prior social relationship. Davis testified that he and Clark were friends, and that Davis called him "Skinny." Nonetheless, during this drug sale, Clark informed Davis that he kept two handguns nearby, and he carried one of the handguns with him when he went to the bedroom to retrieve the crack. Given these facts, there appears to be more than enough evidence to support the jury's finding. Clark's emphasis on their prior social relationship is misplaced. In the context of a drug transaction, a prior social relationship does not foreclose a finding that the defendant "brandished" a firearm within the meaning of section 924(c).

### III.

Both defendants were convicted of two section 924(c) violations. By operation of section 924(c)(1)(A)(ii) and section 924(c)(1)(C)(i), both Johnson and Clark received separate consecutive sentences of seven and twenty-five years.

The district court's application of section 924(c) is a question of law, which we review *de novo*. *United States v. Langan*, 263 F.3d 613, 626–27 (6th Cir.2001). We have upheld multiple convictions and sentences under 18 U.S.C. § 924(c)(1) so long as such convictions are based on separate predicate acts. *United States v. Graham*, 275 F.3d 490, 519–20 (6th Cir.2001); *United States v. Nabors*, 901 F.2d 1351, 1357–58 (6th Cir.1990). For example, a panel of this court upheld the imposition of consecutive sentences for multiple section 924 convictions where each was predicated on

a separate drug transaction. *United States v. Wright*, No. 93–4228, 1995 WL 101300, at *3 (6th Cir. Mar.9, 1995). In contrast, this court overturned consecutive section 924(c) sentences where both offenses were predicated upon a single drug trafficking offense. *United States v. Taylor*, 13 F.3d 986, 994 (6th Cir.1994). Relatedly, this court has also held that consecutive section 924(c) sentences are not permissible where they are predicated on simultaneous possession of two separate illegal substances. *United States v. Johnson*, 25 F.3d 1335, 1338 (6th Cir.1994) (en banc); *see also United States v. Finley*, 245 F.3d 199, 207–208 (2d Cir.2001) (vacating a second section 924(c) conviction where the charged predicate offenses—distribution of cocaine and possession of cocaine with intent to distribute—occurred simultaneously to each other).

■ Both defendants argue that their respective drug offenses were not separate offenses, but were part of a continuing course of criminal conduct. A review of the record demonstrates, however, that defendants' section 924(c) convictions were, in fact, predicated on a separate drug offenses. Simply re-characterizing separate offenses as a single pattern or a single course of conduct does not allow a defendant to escape a consecutive sentence. Clark engaged in two separate offenses—a December 21, 1999 sale of .8 grams of crack cocaine and a January 12, 2000 sale of 2.6 grams. Similarly, Johnson engaged in a December 21, 1999 sale of .9 grams and a December 21 sale of .8 grams. Although Johnson's offenses were separated by less than two hours, they were nevertheless separate offenses because Davis left the residence after the first sale, defendants separately retrieved the second $100 worth of crack and Davis separately paid for the second crack purchase.

**IV.**

Johnson argues his trial counsel was ineffective in failing to move for a new trial on the basis that his section 924(c) convictions were against the manifest weight of the evidence. As Johnson recognizes, this court does not ordinarily review ineffective assistance claims for the first time on direct appeal. *United States v. Hall*, 200 F.3d 962, 965 (6th Cir.2000). Rather, a record must ordinarily be developed pursuant to a 28 U.S.C. § 2255 petition. *Id.* However, this court will entertain an ineffective assistance challenge on direct appeal if the record is sufficiently developed for review. *Id.* The government argues the record is sufficiently developed to address Johnson's ineffective assistance claim.

■ Claims of ineffective assistance are mixed questions of law and fact, and the district court's legal conclusions are reviewed *de novo*. *Barnes v. Elo*, 231 F.3d 1025, 1028 (6th Cir.2000). To prove a claim of ineffective assistance of counsel, a party must demonstrate that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Barnes*, 231 F.3d at 1029. Deficiency requires a showing that counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052. Scrutiny is highly deferential, and the court "must indulge the presumption that trial counsel provided reasonable professional assistance." *Barnes*, 231 F.3d at 1029. Given the evidence against Johnson, there does not appear to be any basis to conclude that trial counsel should have moved for a new trial. Moreover, Johnson's claim of prejudice—that this court would have utilized

the less deferential abuse of discretion standard of review—is not compelling. Given the factual record, it would also be difficult to conclude that the district court abused its discretion in denying such a motion.

## V.

■ Johnson argues that his thirty-two year sentence for two section 924(c) convictions violates the Eighth Amendment's prohibition on cruel and unusual punishment. It does not appear that Johnson's trial counsel raised this issue at the sentencing hearing, which would ordinarily preclude review. *See United States v. Organek*, 65 F.3d 60, 62 (6th Cir.1995). Even if we were to examine this claim, we are satisfied that the Eighth Amendment does not bar Johnson's sentence.

The Eighth Amendment only prohibits extreme sentences that are "grossly disproportionate" to the crime. *Organek*, 65 F.3d at 63. Ordinarily, this court will not engage in a proportionality analysis "except in cases where the penalty imposed is death or life in prison without possibility of parole." *Id.* (quoting *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir.1995)). In a similar Eighth Amendment challenge, the Ninth Circuit ruled that a defendant's section 924(c) sentence, which accounted for twenty-five years of his total sentence, was not cruel and unusual. *United States v. Parker*, 241 F.3d 1114, 1117–18 (9th Cir.2001). Johnson's prison sentence is certainly harsh, but it is not unconstitutionally excessive.

## VI.

■ Where a defendant raises a cognizable *Apprendi* challenge in district court, and repeats that challenge on appeal, we review such claim *de novo*. *United States v. Humphrey*, 287 F.3d 422, 442 (6th Cir. 2002). On the other hand, if a defendant fails to make an objection before the district court, we review for plain error. *Id.*

Although both defendants lodged objections to the district court's findings regarding relevant drug quantity, we need not address whether their objections sufficiently preserved the *Apprendi* issue for appeal because neither defendant can articulate an *Apprendi* error. Both defendants argue that *Apprendi* required the government to prove the exact quantity of drugs attributable to each beyond a reasonable doubt. *Apprendi* provided that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000. A defendant may also assert an *Apprendi* violation "where he can demonstrate that the district court's factual determination resulted in an increase of the range of statutory penalties applicable to the defendant for purposes of sentencing." *Humphrey*, 287 F.3d at 447. Thus, "[a]ggravating factors, other than a prior conviction, that increase the penalty from a nonmandatory minimum sentence to a mandatory minimum sentence, or from a lesser to a greater minimum sentence, are now elements of the crime to be charged and proved." *United States v. Ramirez*, 242 F.3d 348, 351–52 (6th Cir.2001). *Apprendi* does not, however, apply to sentences "in excess of any particular range or based on any particular offense level under the Sentencing Guidelines." *United States v. Garcia*, 252 F.3d 838, 843 (6th Cir.2001). The district court's findings regarding the quantity of drugs attributable to Clark and Johnson did not increase their sentences beyond the 21 U.S.C. § 841(b)(1)(C) twenty-year maximum and did not increase the range of statutory penalties applicable to their conduct. Therefore, we reject defendants' *Apprendi* challenge.

## VII.

For the foregoing reasons, we AFFIRM the convictions and sentences of Clark and Johnson.