23-7651
*United States v. Caille*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21ˢᵗ day of May, two thousand and twenty-five.

PRESENT:    Reena Raggi,
            Steven J. Menashi,
            Sarah A. L. Merriam,
                *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

      *Appellee,*

    v.                                                              No. 23-7651

DIEUVERSON CAILLE,

      *Defendant-Appellant.*\*

_____

---

\* The Clerk of Court is directed to amend the caption as set forth above.

*For Appellee*: ELLEN H. SISE, Assistant United States Attorney (Saritha Komatireddy, Assistant United States Attorney, *on the brief*), *for* John J. Durham, United States Attorney for the Eastern District of New York, Brooklyn, New York.

*For Defendant-Appellant*: ANDREY SPEKTOR (Mary Claire Kennedy, *on the brief*), Norton Rose Fulbright US LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Chin, J., Chen J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court entered October 18, 2023, is **AFFIRMED**.

Defendant-Appellant Dieuverson Caille appeals from a judgment of conviction entered after trial on one count of conspiracy to commit carjacking, three counts of substantive carjacking, and three counts of brandishing a firearm during and in relation to a "crime of violence," *i.e.*, the carjackings. *See* 18 U.S.C. §§ 371, 924(c)(1)(A), 2119. The district court sentenced him to 288 months in prison, including a mandatory twenty-one-year minimum sentence for the firearm charges, and three years of supervised release.

On appeal, Caille argues that (1) carjacking is not a categorical "crime of violence" for purposes of § 924(c)(1)(A); (2) the district court abused its discretion by not holding a suppression hearing about two witness identifications and that it clearly erred by admitting those identifications at trial; and (3) the district court abused its discretion by admitting evidence of uncharged conduct. We assume the

2

parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

# I

Caille argues that carjacking does not qualify as a "crime of violence" under 18 U.S.C. § 924(c)(1)(A). Our precedent says otherwise.

Section 924(c)(1)(A) mandates that anyone who brandishes a firearm "during and in relation to any crime of violence" must "be sentenced to a term of imprisonment of not less than 7 years," to be served consecutively with any other sentence imposed. *Id.* § 924(c)(1)(A)(ii); *see id.* § 924(c)(1)(D). A "crime of violence" is a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* § 924(c)(3)(A). To determine whether an offense qualifies as a crime of violence, a court applies the "categorical approach," identifying "the minimum criminal conduct necessary for conviction under a particular statute by looking only to the statutory definitions—*i.e.*, the elements—of the offense." *United States v. Pastore*, 83 F.4th 113, 118 (2d Cir. 2023) (internal quotation marks and alterations omitted). We determine whether a crime is a "crime of violence" *de novo. See United States v. Walker*, 974 F.3d 193, 201 & n.3 (2d Cir. 2020).

The federal carjacking statute prohibits taking a motor vehicle "from the person or presence of another by force and violence or by intimidation." 18 U.S.C. § 2119. We held in *United States v. Felder* that carjacking is a categorical crime of violence even when committed by intimidation alone. 993 F.3d 57, 80 (2d Cir. 2021). Caille argues that *Felder* is no longer binding after the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022). That is incorrect. *Taylor* held only that attempted Hobbs Act robbery is not a categorical crime of violence because it can be committed without the use, attempted use, or threatened use of force. *See Taylor*, 596 U.S. at 850-52. Nothing in *Taylor* undermines the holding of *Felder* that "[e]ven when committed by intimidation," federal carjacking categorically involves a threatened use of force because it "requires a defendant to

act in a way that he knows will create the impression in an ordinary person that resistance to [the] defendant's demands will be met by force." *Felder*, 993 F.3d at 79-80.

In urging otherwise, Caille points out that § 2119 also criminalizes attempted carjacking, which, after *Taylor*, cannot qualify as a crime of violence. He argues that § 2119 is not divisible between completed and attempted carjacking, and for that reason his § 2119 crimes cannot be deemed categorically violent. He is wrong. A statute is "divisible" if it defines "multiple crimes" rather than "various factual means of committing a single crime." *United States v. Moore*, 916 F.3d 231, 238 (2d Cir. 2019). Section 2119 punishes anyone who, "with the intent to cause death or serious bodily harm," "takes a motor vehicle … by force and violence or by intimidation, or attempts to do so." 18 U.S.C. § 2119. "[F]orce and violence" and "intimidation" may be different factual means by which one can commit a § 2119 crime. *See id.* But an attempt to take a motor vehicle—an inchoate crime—is proscribed in the alternative to a successful taking. The substantive crime is distinct from the inchoate crime because it requires proof of a successful taking. Because the statute "lists elements in the alternative," it "thereby defines multiple crimes." *Pannell v. United States*, 115 F.4th 154, 161 (2d Cir. 2024). Other courts have similarly concluded that § 2119 is divisible between attempted and completed carjacking. *See United States v. Fulks*, 120 F.4th 146, 157 (4th Cir. 2024) ("[T]he federal carjacking statute comprises two separate offenses: completed ('takes') and attempted ('or attempts to do so') carjacking. The evidence favoring divisibility is simply overwhelming."); *United States v. Jackson*, No. 22-3958, 2023 WL 8847859, at *5 (6th Cir. Dec. 21, 2023).

When a statute is divisible into multiple offenses, we look only at the offense of conviction to determine whether it constitutes a crime of violence. *See Pannell*, 115 F.4th at 160. Caille does not dispute that he was convicted of three counts of completed carjacking. And *Felder* established that completed carjacking is categorically a crime of violence. Whatever may be said of attempted carjacking

4

after *Taylor*, Caille's conviction for multiple completed carjackings provides the necessary predicate for his convictions under § 924(c)(1)(A).

**II**

Caille argues that the district court abused its discretion by failing to hold a hearing about the suggestiveness of two identification procedures. In the first, a victim of one of the charged carjackings identified Caille from a six-person photo array two days after the crime. In the second, an acquaintance of Caille's told police that Caille drove her in the stolen car the day after the carjacking; the police showed her a single photograph of Caille, and she confirmed that he was the acquaintance who drove her around. Caille also argues that the district court clearly erred by allowing these witnesses to identify him at trial. We reject both claims.

"A defendant has a due process right not to be the object of suggestive police identification procedures that create a very substantial likelihood of irreparable misidentification." *United States v. Thai*, 29 F.3d 785, 807 (2d Cir. 1994) (internal quotation marks omitted). "We review a district court's determination of the admissibility of identification evidence for clear error, and the decision not to hold an evidentiary hearing for abuse of discretion." *United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001) (citation omitted).

Whether an identification procedure was unduly suggestive depends on "the particular facts of the case and the totality of the surrounding circumstances." *United States v. Al-Farekh*, 956 F.3d 99, 110 (2d Cir. 2020) (quoting *Thai*, 29 F.3d at 808). For photo arrays in particular, "the principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit." *United States v. Maldonado-Rivera*, 922 F.2d 934, 974 (2d Cir. 1990) (internal quotation marks and alteration omitted). "The array must not be so limited that the defendant is the only one to match the witness's description of the perpetrator." *Id.*

5

If the procedure is not unduly suggestive, the identification testimony is "generally admissible," and any questions about reliability can be explored at trial. *Al-Farekh*, 956 F.3d at 110 (quoting *Maldonado-Rivera*, 922 F.2d at 973). "[N]o further inquiry by the court is required." *Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009) (quoting *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001)). If, however, the procedure was unduly suggestive, the in-court identification may still be admitted if it is independently reliable. *See id.*; *see also Neil v. Biggers*, 409 U.S. 188, 200 (1972). Five factors are relevant in determining whether an identification was independently reliable: the opportunity of the witness to see the perpetrator during the crime, the witness's attentiveness, the accuracy of the witness's prior description, the witness's level of certainty when identifying the defendant, and the length of time between the crime and the identification. *See Neil*, 409 U.S. at 199.

## A

As to the victim shown the six-person photo array, he had described the carjacker to the police as a "tall slim dark-skinned male wearing a dark hooded sweatshirt with dark colored pants." App'x 79. Earlier, in a 911 call, the victim said that the perpetrator wore both a blue hooded sweatshirt and a black coat. Comparing Caille's photograph with those of the five fillers, Caille does not uniquely match this description. All six men appear around the same age, they are all dark-skinned, and none is obviously tall or short. Four of the men have slimmer faces, and two appear to be somewhat skinnier than average.

Caille argues that the photo array was unduly suggestive because (1) only he and another man have a "droopy" eye, (2) he is the only one wearing a hooded sweatshirt and jacket, and (3) he is the only one with a neck tattoo. Appellant's Br. 42. But the victim did not describe the carjacker as having either a "droopy eye" or a neck tattoo before he was presented with the photo array. *See Raheem*, 257 F.3d at 134 ("A lineup is unduly suggestive as to a given defendant if he meets the description of the perpetrator *previously given* by the witness and the other lineup

6

participants obviously do not.") (emphasis added). In any event, the neck tattoo is not visible in the photo array. And while the victim did say that the perpetrator was wearing a hooded sweatshirt and jacket, Caille's sweatshirt in the array photograph appears white rather than blue. Meanwhile, the photo array depicts at least one other man wearing a dark jacket or sweatshirt that may have a hood. These minor differences among the array photographs "would hardly suggest to an identifying witness that the defendant was more likely to be the culprit." *United States v. Bautista*, 23 F.3d 726, 731 (2d Cir 1994) (alteration omitted) (quoting *United States v. Archibald*, 734 F.2d 938, 940 (2d Cir. 1984)).

Because the array was not "so limited that [Caille] is the only one to match the witness's description of the perpetrator," it was not unduly suggestive. *Maldonado-Rivera*, 922 F.2d at 974. The district court accordingly did not abuse its discretion by denying a hearing on the matter nor did it clearly err by admitting the identification at trial.

**B**

As to the single-photo identification, generally "[t]he practice of showing a witness a single photo (as opposed to an array) has been widely condemned" as "unduly suggestive." *United States v. Diaz*, 986 F.3d 202, 207 (2d Cir. 2021) (internal quotation marks omitted). In this case, however, the witness's in-court identification was independently reliable, so its admission was not clearly erroneous. At the time Caille was arrested, the witness had known him for "approximately a year." App'x 116. On the day after the BMW carjacking, Caille picked her up in a BMW, and the two were then together in close proximity as Caille drove first to one restaurant and then toward another. After a police officer tried to pull the car over, Caille sped off, hit a woman, and crashed the car. Just one day later, the witness identified Caille as her acquaintance and as the driver of the car. Under these circumstances, the district court acted well within its discretion in finding without a full hearing that the witness could make an independently reliable in-court identification. *See Finley*, 245 F. 3d at 203 (holding

7

that the district court did not abuse its discretion by denying a hearing because "the identification procedure used in this case had sufficient indicia of reliability to satisfy due process"). Accordingly, the district court did not clearly err by allowing the identification at trial.

### III

Caille argues that the district court abused its discretion by admitting a cooperating witness's testimony that, among other things, Caille (1) was a member of two gangs, (2) used guns to commit crimes, (3) participated in an uncharged carjacking, (4) had pistol-whipped a previous victim, and (5) had shot a gun in the past.

Under Rule 404(b) of the Federal Rules of Evidence, a district court may not admit evidence of "any other crime, wrong, or act" to prove that a defendant acted in accordance with some character trait. Fed. R. Evid. 404(b)(1). But the district court may admit evidence of other acts "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* 404(b)(2). In other words, evidence of other acts may be admitted "for any purpose for which it is relevant" so long as it is not used to make a propensity argument. *United States v. Hsu*, 669 F.3d 112, 118 (2d Cir. 2012). The district court must also consider whether the probative value of the evidence is outweighed by potential prejudice. *See* Fed. R. Evid. 403. We review a district court's decision to admit evidence, including its balancing analysis under Rule 403, for abuse of discretion. *See Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 16 (2d Cir. 1996); *Thai*, 29 F.3d at 813.

The district court did not abuse its discretion by admitting the evidence of Caille's uncharged acts. First, the evidence was admitted for permitted purposes. The uncharged carjacking, for example, was "admissible as direct evidence of the conspiracy itself." *United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999) (quoting *United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997)). And the evidence of Caille's gang membership and the gang's history and methods of committing carjackings

were admissible "to inform the jury of the background of the conspiracy charged, in order to explain how the illegal relationship between the participants in the crime developed" and "the mutual trust that existed between coconspirators." *Id.* (quoting *United States v. Rosa*, 11 F.3d 315, 334 (2d Cir. 1993)); *see United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996) (explaining that evidence may be admitted "to explain how a criminal relationship developed" and to show the "relationship of mutual trust" among co-conspirators). Second, Rule 403 did not bar admission of Caille's other acts because the evidence was probative of Caille's relationship with a key witness at trial, and it helped to explain the carjacking conspiracy and the methods Caille and the gang used to commit such carjackings. Any potential prejudice was minimal given that Caille was charged with multiple carjackings at gunpoint, and evidence about his gang membership and other crimes "did not involve conduct more inflammatory than [those] charged crime[s]." *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999).

\* \* \*

We have considered Caille's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

9