UNITED STATES of America, Appellee,

v.

Coleridge LEWTER, also known as Corrupt, Defendant–Appellant.

Docket No. 04–2546–CR.

United States Court of Appeals, Second Circuit.

Argued: March 11, 2005.

Decided: March 24, 2005.

Alexander E. Eisemann, Katonah, N.Y. for Defendant–Appellant.

Marc Litt, Assistant United States Attorney, New York, N.Y. (David N. Kelley, United States Attorney for the Southern District of New York, Adam B. Siegel, Assistant United States Attorney, New York, NY, on the brief) for Appellee.

Before: MESKILL, JACOBS, and STRAUB, Circuit Judges.

JACOBS, Circuit Judge.

Defendant-appellant Coleridge Lewter was convicted, following a jury trial in the United States District Court for the Southern District of New York (Brieant, *J.*), for the following offenses, based on his possession of things that were seized from his apartment in the exercise of a lawful search: (i) possession with the intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); (ii) possession with the

intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (iii) possession of a firearm in furtherance of those drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A); and (iv) knowing possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k).

Lewter argues chiefly that: (i) there was insufficient evidence to support his gun convictions; and (ii) his right to a fair trial was violated by the denial of his request to review his pretrial services report. The judgment of the district court is affirmed; the case is remanded for sentencing proceedings consistent with *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).

**I**

Lewter contends that there was insufficient evidence to support his convictions for possessing a firearm in furtherance of a drug trafficking crime and for knowingly possessing a firearm with an obliterated serial number. *See* 18 U.S.C. §§ 924(c)(1)(A), 922(k). "We review a claim of insufficient evidence *de novo*." *United States v. Jackson*, 301 F.3d 59, 64 (2d Cir.2002). However, "[a] defendant challenging his verdict on sufficiency grounds bears a 'heavy burden.'" *United States v. McCarthy*, 271 F.3d 387, 394 (2d Cir.2001) (quoting *United States v. Bala*, 236 F.3d 87, 93 (2d Cir.2000)). "[W]e must uphold the jury's verdict if we find that '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir.2000) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

On October 28, 2002, agents from the Bureau of Alcohol, Tobacco and Firearms, along with officers from the Newburgh (New York) Police Department, executed a federal search warrant on Lewter's apartment. Lewter was found sitting in his bed. According to the arresting officers, after being read his rights, Lewter stated: (i) that "the drugs were in the dresser"; and (ii) that he was "not that type of drug dealer" and/or "not just your ordinary drug dealer."

On a nearby dresser, the officers observed a digital scale with white powder on it. Inside that dresser, the officers found 71.3 grams of cocaine base, approximately 50 small plastic bags, 1.4 grams of heroin (in 23 individual bags), and $423.25 in cash. Under the bed, was a .357 Magnum revolver with an obliterated serial number, loaded with three rounds of hollow-point ammunition and three conventional rounds. An arresting officer testified that "[f]rom where [Lewter] was laying in the bed, had he taken his right hand and reached down under the bed, he would have been able to obtain [the gun]."

**A. Possession of a firearm in furtherance of drug trafficking**

Lewter concedes that the evidence was sufficient to establish possession of the drugs with intent to distribute, but he argues that the evidence was insufficient to establish that the firearm under his bed was possessed "in furtherance of" that crime.

Federal law criminalizes the mere possession of a firearm only if that possession is "in furtherance of" a drug trafficking crime:

[A]ny person who, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for

such crime of violence or drug trafficking crime ... be sentenced to a term of imprisonment of not less than 5 years ....

18 U.S.C. § 924(c)(1)(A). Under this Court's precedent, "the requirement in § 924(c)(1) that the gun be possessed in furtherance of a drug crime may be satisfied by a showing of some nexus between the firearm and the drug selling operation." *United States v. Finley*, 245 F.3d 199, 203 (2d Cir.2001).

The Fifth Circuit has articulated a non-exclusive list of factors to assist in determining whether a defendant's gun "possession actually furthered the drug trafficking offense." *United States v. Ceballos–Torres*, 218 F.3d 409, 414–15 (5th Cir.2000). Several other circuits have followed the Fifth Circuit's lead. *See, e.g., United States v. Lomax*, 293 F.3d 701, 705 (4th Cir.2002) (applying *Ceballos–Torres* factors); *United States v. Wahl*, 290 F.3d 370, 376 (D.C.Cir.2002) (same). However, since each case has its own wrinkles, reliance on such a list is of limited utility. Ultimately, the test is whether a reasonable jury could, on the evidence presented at trial, find beyond a reasonable doubt that possession of the firearm facilitated a drug trafficking crime (here, possession with the intent to distribute); "in furtherance" means that the gun afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking.

■ Possession of a firearm to defend a drug stash clearly furthers the crime of possession with intent to distribute the contents of that stash. *See United States v. Garner*, 338 F.3d 78, 81 (1st Cir.2003) ("When guns and drugs are found together and a defendant has been convicted of possession with intent to distribute, the gun, whether kept for protection from robbery of drug-sale proceeds, or to enforce payment for drugs, may reasonably be considered to be possessed 'in furtherance of' an ongoing drug-trafficking crime."); *United States v. Suarez*, 313 F.3d 1287, 1293 (11th Cir.2002) (where firearms were hidden throughout a stash house, "the jury could reasonably have inferred that the guns were to be used to protect the conspirators' investment in their shipment").

The evidence was sufficient to support the jury's verdict that Lewter possessed the gun to defend his drug stash. The firearm had an obliterated serial number and was loaded with hollow-point bullets—facts that militate against an inference of innocent use, such as target practice or hunting. Moreover, the gun was stored within feet of Lewter's drug stash and within Lewter's reach. *See Finley*, 245 F.3d at 202–03 (affirming conviction under § 924(c)(1) where unloaded shotgun was stored under pile of clothes in the room from which drugs were sold); *see also Wahl*, 290 F.3d at 376–77 (affirming conviction under § 924(c)(1) where loaded gun was within defendant's reach and in close proximity to defendant's drug stash).

Lewter draws a distinction, which he deems critical, between his case and *Finley*, in which we held that "the jury could properly have found that Finley kept the shotgun for protection in proximity to the window from which he sold the drugs." 245 F.3d at 203. Finley's gun (though unloaded) quite evidently provided security during drug transactions, whereas Lewter did not sell drugs inside his apartment, so that (he argues) it is entirely possible that he possessed the gun for personal safety in a tough neighborhood rather than in furtherance of his drug trafficking, and that the jury had no basis for selecting between those possibilities. We disagree.

The offense of conviction was possession with intent, not distribution; so the jury issue—whether the gun furthered the drug

trafficking crime—comes down to whether the gun facilitated Lewter's drug possession with intent. Moreover, a gun may be possessed for multiple purposes; possession for personal protection does not preclude possession in furtherance of a drug trafficking offense. In this case, the person to be protected was a drug dealer, and among the things being protected were a saleable quantity of drugs, drug packaging paraphernalia, and the proceeds of drug trafficking.

### B. Possession of a firearm with an obliterated serial number

█ Lewter concedes that there was sufficient evidence for the jury to conclude that he possessed the firearm, and that the firearm had an obliterated serial number. But Lewter contends that there was no direct evidence that he knew the serial number had been obliterated.

█ Under 18 U.S.C. § 922(k), it is "unlawful for any person knowingly to . . . possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered." To sustain a conviction under § 922(k), the government must prove the defendant's knowledge that the serial number had been removed. *See United States v. Haynes*, 16 F.3d 29, 33–34 (2d Cir.1994). Knowledge that a serial number had been obliterated can be inferred from circumstantial evidence. *See United States v. Moore*, 54 F.3d 92, 101 (2d Cir.1995) (where defendant served as a middleman in a gun transaction, "[a] rational juror could also conclude that when [the defendant] distributed guns to members of the organization he had inspected them and was aware that they lacked serial numbers").

Lewter argues that the serial number on his gun was obliterated so neatly that it was not self-evident from the appearance of the gun that a serial number had ever been there—thus negating any inference that he knew of the alteration. The government responds that Lewter's knowledge was demonstrated by the following facts and inferences: (i) the gun was in Lewter's apartment, within arm's reach, suggesting that he was familiar with the gun; (ii) Lewter possessed the gun in furtherance of his drug trafficking crimes, suggesting that he would desire an untraceable weapon; and (iii) the gun was worth $500 to $600, suggesting that Lewter likely inspected it before purchasing it. The government further argues that the jury inspected the gun, and was competent to decide whether Lewter would have realized that the serial number had been obliterated. We agree that this evidence provided the jury with a sufficient basis to conclude that Lewter knew the serial number on his gun had been obliterated.

### II

█ Lewter contends that his right to a fair trial was violated by, *inter alia*, the district court's denial of his request to review his pretrial services report ("PSR"), as part of an effort to call as a witness the Pretrial Services Agency Officer ("PSA Officer") who interviewed Lewter after his arrest. This Court reviews the district court's evidentiary rulings for abuse of discretion, *United States v. Grinage*, 390 F.3d 746, 749 (2d Cir.2004), and harmless error analysis applies, *United States v. Yousef*, 327 F.3d 56, 156 (2d Cir.2003).

Information contained in a PSR "shall be used only for the purposes of a bail determination and shall otherwise be confidential"; however, "[e]ach pretrial services report shall be made available to the attorney for the accused and the attorney for the Government." 18 U.S.C. § 3153(c)(1). PSRs are kept confidential primarily to

ensure the defendant's candor. *See United States v. Pena,* 227 F.3d 23, 26 (2d Cir.2000) ("This confidential treatment is intended to ... ensure that courts do not 'receive only incomplete information,' because defendants 'may be reluctant to cooperate with pretrial services officers unless assured of the confidentiality of the information they reveal to the officers.'") (quoting H.R. Conf. Rep. No. 97–792, at 8 (1982), U.S. Code.Cong. & Admin.News 1982, p. 2393). A PSR may nevertheless be used for impeachment purposes, *United States v. Griffith,* 385 F.3d 124, 126 (2d Cir.2004), and in a third party's criminal defense where "there is a compelling need for disclosure to meet the ends of justice," *United States v. Moore,* 949 F.2d 68, 72 (2d Cir.1991) (internal quotation marks omitted).

Lewter requested his PSR in aid of securing testimony from the PSA Officer who interviewed him after his arrest. Lewter wanted to elicit testimony from the PSA Officer that Lewter was high on PCP when he was arrested, and thereby call into question the reliability of the statements he is alleged to have made: (i) that "the drugs were in the dresser"; and (ii) that he was "not that type of drug dealer" and/or "not just your ordinary drug dealer."

The district court reviewed Lewter's PSR *in camera,* and found that "the report does contain the statement by the officer that on October 28, 2002, PSA attempted to interview the defendant, but the defendant was unable to effectively participate because he was high on PCP." The district court nevertheless did not "feel called upon to release the report." The government pointed out that "the confidentiality interest lies with the defendant," but the court ruled that "the confidentiality belongs to the court," that Lewter's PSR could only be released "for good cause shown," and that Lewter failed to show that "other means of proving the same facts [had been] exhausted." Unwilling "to subject [the] Pretrial Services Officer to coming in and testifying," the court denied Lewter access to his PSR and suggested that he instead call the arraigning magistrate judge as a witness.

■ The district court erred in refusing Lewter access to his own PSR. *See* 18 U.S.C. § 3153(c)(1) ("Each pretrial services report shall be made available to the attorney for the accused and the attorney for the Government."). This error, however, was harmless in this case. As the district court found, the probative value of the testimony sought was minimal because it went to "a very peripheral issue in the case." This line of attack on the reliability of Lewter's statements was unpersuasive: the drugs were discovered where he said they would be; and the amount discovered, in the circumstances of that discovery, was sufficient for the jury to conclude that he was *some* type of drug dealer. In any event, as the government points out, Lewter was allowed to marshal other evidence at trial suggesting that he was intoxicated at the time of his arrest. In view of these considerations, we hold that the district court's error was harmless and no remedy on appeal is required.

We have considered Lewter's remaining arguments on this appeal and find each of them to be without merit. For the foregoing reasons, the judgment of the district court is affirmed; the case is remanded for sentencing proceedings consistent with *United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) and *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005).