**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-4311**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JAMISON J. MORTON,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.   Robert E. Payne, District Judge.  (3:05-cr-409)

Submitted: June 15, 2007                    Decided:  July 9, 2007

Before WILKINSON, TRAXLER, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Robert L. Flax, Richmond, Virginia, for Appellant. Chuck Rosenberg, United States Attorney, Stephen W. Miller, Assistant United States Attorney, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following a jury trial, Jamison Morton was convicted of one count of possession with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. § 841 (2000) ("Count One"), one count of possession of five grams or more of crack cocaine, in violation of 21 U.S.C. § 844 (2000) ("Count Two"), one count of possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (2000) ("Count Three"), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (2000) ("Count Four"). Morton was sentenced to 211 months' imprisonment. For the reasons set forth below, we affirm Morton's convictions and sentence.

Taken in the light most favorable to the Government, Evans v. United States, 504 U.S. 255, 257 (1992), the evidence adduced at trial established the following facts. In June 2005, City of Richmond Police Officers Gilbert, Lindsey, Taylor, and Martin were surveilling a certain part of the Church Hill neighborhood. During the course of this surveillance, Gilbert observed an individual later identified as Morton engage in several interactions that were, in Gilbert's opinion, consistent with street-level drug transactions. However, Gilbert did not believe he had a sufficient basis to intervene. Morton eventually left the

- 2 -

area, driving a silver Cadillac. Gilbert directed the other officers to follow the Cadillac and to stop it if possible.

While in pursuit, Lindsey and Taylor noticed that one of the Cadillac's brake lights was not functioning. Lindsey contacted police dispatch via radio, informing dispatch that they planned to stop the vehicle. The officers activated their blue lights; instead of yielding, however, Morton fled. The officers continued to pursue Morton. Morton eventually entered an alley, at which point he threw a white plastic bag out of the vehicle's window. The bag remained airborne for only a few seconds before falling straight to the ground. Still in contact with dispatch, Lindsey reported the bag being thrown from the vehicle but, as they were still in pursuit, the officers did not stop to retrieve it. After Morton was apprehended, Lindsey returned to the alley where he found the bag, which contained a loaded .9 mm pistol wrapped in a T-shirt and 115 individually wrapped pieces of crack cocaine.[1]

At trial, Officers Gilbert, Lindsey, and Taylor all testified to their observations on the night in question. The Government also called Special Agent Robert Scanlon of the DEA as an expert witness on drug trafficking and its connection to firearms. Agent Scanlon explained that possessing 115 individually wrapped pieces of crack cocaine was more consistent with an intent

---

[1] The parties stipulated that the total weight of the seized crack was 11.33 grams.

to distribute than with personal use, and that firearms are frequently used to facilitate drug transactions.

At the close of the Government's case-in-chief, Morton moved, pursuant to Fed. R. Civ. P. 29, for judgment of acquittal; the district court denied the motion. Testifying in his own defense, Morton denied having thrown anything out of the car window and explained that Gilbert had previously harassed Morton.

After it received the case, the jury sent the court two requests: one, to review Agent Scanlon's testimony; and two, for clarification as to whether the Government had to establish Morton brandished the firearm in order to prove Morton's guilt on Count Three. Without objection, the court denied the jury's request to review Scanlon's testimony. With regard to the second request, in addition to directing the jury to its prior instruction, the court also expressly noted that the Government did not have to prove Morton actually brandished the firearm. Morton's attorney objected to this supplemental information. The court also rejected one juror's request to present questions orally, noting that any questions should be submitted in writing to allow the court time to consult with the attorneys before responding. Shortly thereafter, the jury returned a guilty verdict on all four counts.

Prior to trial, the Government offered Morton a plea deal that involved dropping Count Four and foregoing enhanced sentencing. Before the deadline for accepting the plea expired,

Morton contacted a new attorney, David Lassiter. Lassiter contacted the Assistant United States Attorney prosecuting Morton and asked to review the Government's case. Government counsel provided Lassiter a copy of Morton's file. Lassiter requested an extension of the period within which to accept the plea offer, but Government counsel declined this request as the deadline had already been extended once. Government counsel informed Lassiter that if Morton did not accept the plea offer by noon on December 5, the Government would file a notice of its intent to seek an enhanced sentence pursuant to 21 U.S.C. § 851 (2000). Upon receipt of Morton's rejection of the plea offer, the Government filed § 851 notice of its intent to seek an enhanced sentence.

Several days later, Government counsel learned that the City of Richmond Police Department had an audio tape of the discourse between Lindsey and the dispatch officer. After receiving a copy of the tape, Lassiter requested that the Government withdraw the § 851 notice and reopen its plea offer, thus giving Morton an opportunity to reconsider his decision to plead not guilty in light of this new evidence. The Government declined Lassiter's request.

Lassiter filed a motion to compel the Government to withdraw the § 851 notice and to preclude the use of the tape during the Government's case-in-chief. Lassiter argued that the Government had agreed to provide the defense all of the evidence it

had against Morton in order to facilitate Morton making an informed decision regarding whether to plead guilty; thus, because the audiotape surfaced after Morton rejected the plea offer, Lassiter maintained that the Government should be required to withdraw the § 851 notice and to permit Morton another opportunity to accept the plea offer. The court denied the motions. Morton proceeded to trial and was found guilty on all counts.

Prior to sentencing, the probation officer prepared a pre-sentence report ("PSR") in which he recommended a total offense level of thirty-one and criminal history category IV.[2] The probation officer determined that Morton had nine criminal history points, seven of which related to past convictions. At sentencing, the district court adopted the Guidelines application set forth in the PSR without modification and, after considering the 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2006) factors, sentenced Morton to 211 months' imprisonment.[3] Morton timely noted his appeal.

Morton's appellate brief presents six issues. Counsel avers that only three of these issues have merit: (1) whether there was sufficient evidence to support Morton's convictions for possession with intent to distribute and use of a firearm in

---

[2]Morton does not ascribe any error to the calculation of his total offense level on appeal.

[3]Morton's sentence consisted of 151 months on Counts One and Two, and 120 months on Count Four, to be served concurrently, and sixty months on Count Three, to run consecutively.

furtherance of a drug trafficking offense; (2) whether Morton's criminal history was correctly calculated; and (3) whether Morton's sentence was reasonable and whether this court should afford a within-Guidelines range sentence a presumption of reasonableness. The other three issues, raised pursuant to Anders v. California, 386 U.S. 738 (1967), are that:  (1) the pursuit and stop of Morton's vehicle violated his Fourth Amendment rights; (2) the court abused its discretion in responding to the jury's questions; and (3) the court erred in denying Morton's motion to compel withdrawal of the § 851 notice.

## I.   **Sufficiency of the Evidence**

This court reviews sufficiency of the evidence challenges by determining whether, viewing the evidence in the light most favorable to the Government, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).  The court reviews both direct and circumstantial evidence, and permits the "[G]overnment the benefit of all reasonable inferences from the facts proven to those sought to be established."  Tresvant, 677 F.2d at 1021.  Furthermore, "[t]he Supreme Court has admonished that we not examine evidence in a piecemeal fashion, but consider it in cumulative context."  United States v. Burgos, 94 F.3d 849, 863 (4th Cir. 1996) (citations omitted).

In evaluating the sufficiency of the evidence, this court does not "weigh the evidence or review the credibility of the witnesses." United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997). Where the evidence supports differing reasonable interpretations, the jury decides which interpretation to credit. Id. (quotations omitted). This court will uphold the jury's verdict if there is substantial evidence to support it, and will reverse only in those rare cases "where the prosecution's failure is clear." United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (quotations omitted).

To establish Morton's guilt on Count One — possession with intent to distribute — the Government must prove beyond a reasonable doubt that Morton: (1) knowingly; (2) possessed the controlled substance; (3) with the intent to distribute it. Burgos, 94 F.3d at 873. Possession may be actual or constructive, United States v. Rusher, 966 F.2d 868, 878 (4th Cir. 1992), and may be established by circumstantial evidence. United States v. Wright, 991 F.2d 1182, 1187 (4th Cir. 1993). Intent to distribute may be inferred if the amount of drugs found exceeds an amount normally associated with personal consumption. Id.

There was ample evidence to support the jury's verdict. Gilbert testified that, after observing Morton engage in several exchanges consistent with hand-to-hand, street-level drug sales, Morton drove away in a Cadillac. Morton was the sole occupant of

the vehicle.  While in pursuit of the Cadillac, Lindsey and Taylor observed the driver, later identified as Morton, throw a white plastic bag from the vehicle into an alley.  Lindsey recovered the plastic bag in which he found 115 individually wrapped crack rocks and a firearm.  DEA Agent Scanlon testified that the manner in which the crack was packaged and the total weight was more consistent with an intent to distribute than with personal use.  Although the jury heard Morton's testimony in which he denied throwing the bag from his car window, it is plain that the jury credited the officers' version of events over Morton's.  This credibility determination was well within the jury's province and we will not disturb it on appeal.

With regard to Count Three, to establish a violation of 18 U.S.C. § 924(c), use of a firearm in furtherance of a drug trafficking offense, the Government must prove that "possession of a firearm furthered, advanced, or helped forward a drug trafficking crime."  United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002).  Whether the firearm served such a purpose is ultimately a factual question, and the factfinder is free to consider the numerous ways in which a firearm might further or advance drug trafficking.  Id.  "Ultimately, the test is whether a reasonable jury could, on the evidence presented at trial, find beyond a reasonable doubt that possession of the firearm facilitated a drug trafficking crime . . .; 'in furtherance' means that the gun afforded some advantage

(actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking." United States v. Lewter, 402 F.3d 319, 322 (2d Cir. 2005). The court has recognized that drug deals frequently involve guns. Lomax, 293 F.3d at 706.

Again, our review of the transcript reveals sufficient evidence on which the jury could convict Morton. Lindsey testified that he recovered the loaded firearm from the bag he observed Morton throw from his vehicle; 115 pieces individually wrapped crack cocaine were found in this same bag. As Morton was the sole occupant in the vehicle, it is plain that he actually possessed the firearm. The fact that Morton had the firearm in close proximity to the crack, which in turn was clearly packaged for sale, indicates that the firearm provided Morton, at minimum, a potential advantage. Lewter, 402 F.3d at 322. For these reasons, we affirm the jury's guilty verdicts on both Counts One and Three.

## II.  Criminal History Calculation

Morton challenges the attribution of criminal history points based on three prior convictions: driving while under a suspended license, possession of an alcoholic beverage by a minor, and driving while under a suspended license, second or subsequent offense.  According to Morton, none of these convictions are countable under the Guidelines, thus yielding only four criminal history points and a category III criminal history.

Morton did not raise any objection to the calculation of his criminal history in the district court. Accordingly, our review is for plain error. United States v. Hughes, 401 F.3d 540, 547 (4th Cir. 2005); United States v. Martinez, 277 F.3d 517, 524 (4th Cir. 2002). Under the plain error standard, Morton must show: (1) there was error; (2) the error was plain; and (3) the error affected his substantial rights. United States v. Olano, 507 U.S. 725, 732-34 (1993). When these conditions are satisfied, this court may exercise its discretion to notice the error only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. at 736 (internal quotation marks omitted). The burden of showing plain error is on the defendant. United States v. Strickland, 245 F.3d 368, 379-80 (4th Cir. 2001).

Morton has failed to demonstrate any error, let alone plain error, in calculating his criminal history. Morton argues that he should not have received one criminal history point for his conviction for possession of an alcoholic beverage by a minor because "[c]onvictions for public intoxication are never counted" under United States Sentencing Guidelines § 4A1.2(c)(2) (2005) ("USSG"). However, the underlying offense was possession of an alcoholic beverage by a minor. As this is plainly distinct from a conviction for public intoxication, this particular Guideline affords Morton no relief.

- 11 -

Relying on USSG § 4A1.2(c)(1) (2005), Morton next asserts that he should not have received a criminal history point for either his conviction for driving while under a suspended license, or his conviction for driving while under a suspended license — second or subsequent offense, because he did not serve more than thirty days on either conviction.

Section 4A1.2(c)(1) provides that certain misdemeanor offenses will be counted in computing a defendant's criminal history if "the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days." The Guideline lists "driving without a license or with a revoked or suspended license" as one such countable offense. USSG § 4A1.2(c)(1). The language of the Guideline clearly demonstrates that, in determining whether the conviction should be counted, it is not the amount of time the defendant actually serves that controls; instead, the sentencing court must look to the term of imprisonment imposed. Id.; see also USSG § 4A1.2, cmt. n.2 (2005) ("[C]riminal history points are based on the sentence pronounced, not the length of time actually served.").

Here, for the initial conviction for driving while under a suspended license, Morton was sentenced to thirty days' imprisonment, suspended conditioned upon good behavior; for the conviction for driving while under a suspended license, second or subsequent offense, Morton received a ninety-day term of

imprisonment, eighty days of which were suspended conditioned upon three years of good behavior. With regard to the first conviction, the suspension of the sentence in its entirety does not alter the fact that Morton was actually sentenced to thirty days' imprisonment. USSG § 4A1.2(a)(3) (2005). Accordingly, the district court did not err in awarding one criminal history point for this conviction.

With regard to the second or subsequent suspended license conviction, Morton served ten days on the ninety day sentence he received. This is plainly sufficient to support the imposition of one criminal history point. USSG § 4A1.2, cmt. n.2. The district court committed no error in adopting the PSR's calculation of Morton's criminal history.

## III. **Reasonableness of Morton's Sentence**

Morton next asserts that his criminal history category overstates his criminal history. Because Morton did not raise this issue below, we review only for plain error. Hughes, 401 F.3d at 547.

While Morton ascribes error to his criminal history category, he also concedes that the probation officer properly calculated Morton's criminal history. We have reviewed the calculation of Morton's criminal history and find no plain error. Morton's criminal record establishes Morton's continued refusal to

abide by the law, and that is accurately reflected in his criminal history category.

Morton next asserts a cursory challenge to this court's approach to resolving appeals from post-Booker[4] sentences. Particularly, Morton maintains that this court should not afford sentences within the properly calculated Guidelines range a presumption of reasonableness. We reject this argument as foreclosed by circuit precedent. See, e.g., United States v. Montes-Pineda, 445 F.3d 375, 379 (4th Cir.), petition for cert. filed, __ U.S.L.W. __ (U.S. July 21, 2006) (No. 06-5439); United States v. Johnson, 445 F.3d 339, 341-42 (4th Cir. 2006); United States v. Moreland, 437 F.3d 424, 433 (4th Cir.), cert. denied, 126 S. Ct. 2054 (2006); United States v. Green, 436 F.3d 449, 457 (4th Cir.), cert. denied, 126 S. Ct. 2309 (2006).

## IV. Validity of Pursuit and Stop

The first issue raised pursuant to Anders is Morton's contention that the officers' pursuit and eventual seizure of Morton violated his Fourth Amendment rights. Morton maintains that, although the officers averred that they initiated the traffic stop because of the Cadillac's brake light, this was merely pretextual as the pursuit and the stop were truly motivated by their suspicions that Morton had engaged in drug trafficking.

---

[4]United States v. Booker, 543 U.S. 220 (2005).

Counsel correctly asserts that this argument has no merit. Whatever subjective intent the officers may have had at the beginning of their pursuit is irrelevant to determining whether they had probable cause to stop Morton's vehicle. United States v. Whren, 517 U.S. 806, 809-10 (1996); see also United States v. Hassan El, 5 F.3d 726, 730 (4th Cir. 1993) ("[W]hen an officer observes a traffic offense or other unlawful conduct, he or she is justified in stopping the vehicle under the Fourth Amendment."). Having observed the malfunctioning brake light, the officers had ample probable cause to initiate the stop. Accordingly, there was no Fourth Amendment violation.

## V.  Response to Jury's Inquiries

The next Anders issue is whether the district court abused its discretion in handling the jury's questions and requests. This court reviews a district court's decision to respond to a jury's question, and the form of that response, for abuse of discretion. United States v. Smith, 62 F.3d 641, 646 (4th Cir. 1995). "[I]n responding to a jury's request for clarification on a charge, the district court's duty is simply to respond to the jury's apparent source of confusion fairly and accurately without creating prejudice." Id. An error requires reversal only if it is prejudicial in the context of the record as a whole. See United States v. United Med. & Surgical Supply Corp., 989 F.2d 1390, 1406-07 (4th Cir. 1993). Our review of the record leads us to

- 15 -

conclude that the district court did not abuse its discretion in handling any of the jury's requests.

## VI.  Denial of Motion to Compel

Finally, Morton asserts that the district court erred in denying his motion to compel the Government to withdraw the § 851 notice of its intent to seek an enhanced sentence and to reinstate its plea offer.  Morton appears to take the position that the Government's discovery of the audiotape of Lindsey's narration of events somehow triggered an obligation on the Government's part to withdraw the § 851 notice and to re-extend its plea offer, because Morton decided to reject the Government's plea deal prior to knowing that this evidence existed.

This claim is wholly without merit.  The Government afforded Morton ample opportunity to plead guilty and avoid an enhanced sentence under § 851.  Morton rejected the proffered plea offer, knowing that a consequence of that decision would be that the Government would seek an enhanced sentence.  It was not until after Morton rejected the plea offer that the Government discovered the audiotape of Lindsey's conversation with dispatch.  There was no agreement between the parties that, should the Government discover other inculpating evidence, it would permit Morton to reconsider his not guilty plea.  As there was simply no agreement the court could have compelled the Government to perform, there was no error in denying the motion to compel.

For the foregoing reasons, we affirm Morton's convictions and sentence. We deny Morton's motions to file a pro se supplement and to amend that supplement. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>