**UNITED STATES of America,**
**Appellee,**

v.

**Tranel McCOY, also known as Freddie,**
**Defendant–Appellant.**

Nos. 07–0648–cr, 07–0652–cr.

United States Court of Appeals,
Second Circuit.

Dec. 17, 2008.

James E. Swaine, Esq., New Haven, CT, for Defendant–Appellant.

Robert M. Spector (Sandra S. Glover, on the brief), Assistant United States Attorneys, for Nora R. Dannehy, Acting United States Attorney for the District of Connecticut, Hartford, CT, for Appellee.

PRESENT: Hon. JOSEPH M. McLAUGHLIN, Hon. DEBRA ANN LIVINGSTON, Circuit Judges, Hon. JOHN G. KOELTL, District Judge.[1]

## SUMMARY ORDER

Defendant–Appellant Tranel McCoy was convicted by a jury in the United States District Court for the District of Connecticut (Kravitz, J.) of one count of conspiracy to distribute five or more grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846; one count of possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B); one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B); and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). On appeal, McCoy argues that (1) there is insufficient evidence to sustain the firearm possession conviction and (2) evidence obtained from the apartment where McCoy was arrested should have been suppressed because the affiants to the warrant application intentionally omitted material information. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

## I. Sufficiency of the Evidence

We review de novo a claim of insufficient evidence. United States v. Jackson, 301 F.3d 59, 64 (2d Cir.2002). "A defendant challenging the sufficiency of trial evidence bears a heavy burden, and the reviewing court must view the evidence presented in the light most favorable to the government and draw all reasonable inferences in the government's favor." United States v. Gagliardi, 506 F.3d 140, 149 (2d Cir.2007) (internal quotation marks omitted) (quoting United States v. Giovanelli, 464 F.3d 346, 349 (2d Cir.2006) (per curiam)). We will affirm a jury verdict unless "no rational trier of fact could have found all of the elements of the crime beyond a reasonable doubt." Id. at 149–50 (internal quotation marks omitted).

In order to convict under 18 U.S.C. § 924(c), the government must prove that the defendant (1) possessed a firearm (2) in furtherance of a drug trafficking crime. See United States v. Finley, 245 F.3d 199, 203 (2d Cir.2001). We conclude that a rational fact-finder could find both elements satisfied here.

"Possession of a firearm may be established by showing that the defendant

1. The Honorable John G. Koeltl, United States District Judge for the Southern District of New York, sitting by designation.

'knowingly [had] the power and the intention at a given time to exercise dominion and control over an object.' " *Id.* (quoting *United States v. Hastings,* 918 F.2d 369, 373 (2d Cir.1990)). This may be established by direct or circumstantial evidence. *United States v. Payton,* 159 F.3d 49, 56 (2d Cir.1998). The firearm at issue here was found in the drawer of an "entertainment-style cabinet" in the master bedroom of the apartment, a bedroom shared by McCoy and his wife. The firearm contained a magazine loaded with ammunition. The cabinet also contained "a pretty large amount of crack cocaine," "a glass style plate which had a razor blade and an amount of ... cocaine or rock cocaine residue on it," a "Baggie containing several individual bags of marijuana," some "packaging material" and "a scale." When police located the crack cocaine during the execution of the search warrant, McCoy's spouse became "verbally upset," and Detective Farrell testified that he heard McCoy say something to the effect of "[d]on't worry, they know it's mine, they know you had nothing to do with it," which he repeated over and over. Further, a black pouch located under the bed in the master bedroom contained $1700 and a credit card. There was evidence of a matching credit card receipt listing the name Freddy McCoy and the address of the searched apartment. There were also "other documents in the residence" that indicated the name Freddy McCoy and the address of the searched apartment. Finally, although McCoy asked John Ball, who was also present when the search warrant was executed, to take responsibility for the firearm, McCoy never suggested that Ball take responsibility for the drugs in the master bedroom.

This evidence was sufficient for a rational jury to find beyond a reasonable doubt that McCoy exercised "dominion and control" over the drugs and drug-related materials in the master bedroom, as well as the firearm located in the same cabinet. *Finley,* 245 F.3d at 203. The jury was free to credit the testimony of Ball to the effect that the firearm did not belong to him and to reject the testimony of McCoy's stepdaughter and son suggesting the contrary. *See Payton,* 159 F.3d at 56 (2d Cir.1998) (stating, with respect to an "alternative explanation" for a firearm, that the "jury heard this version of events and was free to assign whatever weight it wished to the defense witnesses' credibility").

■ There was also sufficient evidence for a rational jury to "find beyond a reasonable doubt that possession of the firearm facilitated [McCoy's] drug trafficking crime ...; [that is,] afforded some advantage (actual or potential, real or contingent) relevant" to the offense. *United States v. Lewter,* 402 F.3d 319, 322 (2d Cir.2005). The proximity of the firearm to drug-related contraband seized in the master bedroom—particularly in light of McCoy's admission that the crack cocaine belonged to him—supported the jury's finding that the gun was used to facilitate drug trafficking. There was additional evidence that the firearm's safety was off, and that the magazine was loaded with hollow point bullets, which provide greater protection than normal bullets; there was in addition expert testimony that firearms are commonly used for protection in the drug trade. *See United States v. Snow,* 462 F.3d 55, 63 (2d Cir.2006) ("From the proximity between the handguns, proceeds, trace amounts of drugs, and drug paraphernalia, a reasonable juror could conclude that the person to be protected was a drug dealer and drug packaging paraphernalia, and the proceeds of drug trafficking were among the things being protected." (internal quotation marks omitted)); *Lewter,* 402 F.3d at 323 ("In this

case, the person to be protected was a drug dealer, and among the things being protected were a saleable quantity of drugs, drug packaging paraphernalia, and the proceeds of drug trafficking."); *United States v. Garner*, 338 F.3d 78, 81 (1st Cir.2003) ("When guns and drugs are found together and a defendant has been convicted of possession with intent to distribute, the gun, whether kept for protection from robbery of drug-sale proceeds, or to enforce payment for drugs, may reasonably be considered to be possessed 'in furtherance of' an ongoing drug-trafficking crime."). This evidence was sufficient to permit a rational fact-finder to conclude that the weapon was possessed in furtherance of drug trafficking.

## II. Validity of the Search Warrant

■ Under the doctrine of *Franks v. Delaware*, 438 U.S. 154, 164–72, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), McCoy contends that there were "intentional and material misrepresentations or omissions" in the warrant application for the search of the apartment, thereby "undermin[ing] the validity of the warrant and the resulting search or seizure." *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir.2003). "A misrepresentation or omission is intentional when the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth. It is material when the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding." *Id.* at 64–65 (internal quotation marks omitted). When gauging materiality, "[t]he ultimate inquiry is whether, after putting aside erroneous information and material omissions, there remains a residue of independent and lawful information sufficient to support probable cause." *Id.* at 65 (internal quotation marks omitted). While we review "[w]hether the untainted portions [of the affidavit] suffice to support a probable cause finding" *de novo*, the issue of "[w]hether a person acted deliberately or recklessly is a factual question of intent that we review only for clear error." *Id.* (internal quotation marks omitted).

McCoy raises the following alleged omission: that in the early morning of December 13, 2005, the same day the warrant application was presented to a Connecticut Superior Court Judge, the confidential informant used to conduct controlled drug purchases at the apartment building was arrested for, and admitted to, the illegal possession of firearms in violation of 18 U.S.C. § 922(g)(1).[2] Gov. App. 19, 42.

This argument is without merit. First, the district court specifically credited the testimony of detectives Salkeld and Farrell that they were unaware of the informant's arrest until after the execution of the search warrant. Appellant's App. Vol. I. 10. The district court also noted their testimony that the informant had provided reliable information in the past, that they were unaware of the informant providing any false information, and that the informant was warned he could be prosecuted for providing false information. *Id.* 10–11. McCoy's bare assertion that the detectives'

---

2. It was also disclosed that in January 2006, *after* the warrant was executed on December 20, 2005, the confidential informant provided false information about a prospective purchase and attempted to steal money from the agents handling him. Suppression Hr'g Tr. 8–9; Gov.App. 43 n. 1. McCoy does not dispute on appeal that these events transpired after the warrant issued in this case, vaguely asserting that "it became known that the informant had lied to law enforcement officials and had stolen money from an Alcohol, Tobacco and Firearms agent." Appellant's Br. 16. This subsequent information could not have been intentionally or recklessly omitted from the warrant application, and thus provides no basis for a *Franks* challenge.

testimony "is just not credible when the officers have been running the informant for more than six months," Appellant's Br. 17, absent citation to any evidence, is not sufficient to disturb the district court's factual finding to the contrary as clear error.

Second, the alleged omission would not vitiate the Superior Court Judge's finding of probable cause in the circumstances of this case. The informant had provided reliable information in the past that lead to arrests and the seizure of drugs and other illegal substances. Moreover, the affiants to the search warrant affidavit conducted two controlled drug purchases at the apartment building with the confidential informant. The informant was checked for narcotics, contraband, and money before each purchase, and after exiting the apartment building, was observed until his arrival at a predetermined location, where he was searched again. Gov.App. 32–33. Both December 7, 2005 and December 12, 2005, the informant delivered a substance testing positive for the presence of narcotics to the affiants after visiting the apartment building. *Id.* Although the affiants relied on the credibility of the informant in that they could not personally observe him conduct the purchase in the second floor apartment at issue (as opposed to the first floor apartment or a hallway), his story was independently corroborated by (1) the affiants' observation of a pattern of visitors to the building consistent with narcotics related activity, *id.* 32, and (2) the fact that the informant had secured narcotics from inside the building. The above evidence provides sufficient corroboration so as to constitute a "residue of independent and lawful information sufficient to support probable cause." *Awadallah,* 349 F.3d at 65 (internal quotation marks omitted). Thus, the alleged omission here does not undermine the validity of the search warrant.

For the foregoing reasons, McCoy's conviction is AFFIRMED.